IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| **TESFAY GEBREMICAEL,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. |
| | ) **JURY DEMAND** |
| **CENTRAL PARKING SYSTEM, INC.** | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

### I. Nature of Action

1. This is an action for national origin discrimination in violation of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §2000e, *et seq.*.

### II. Parties

2. The Plaintiff, Tesfay Gebremicael, is and was at all times pertinent to this complaint a resident of Davidson County, Tennessee.

3. The Defendant, Central Parking System, Inc. is an employer within the meaning of Title VII and employs more than fifteen (15) persons.

### III. Jurisdiction

4. Jurisdiction is granted to this Court through the provision of 28 U.S.C. §§1331 (Federal Question).

### IV. Venue

5. Venue is in the United States District Court for the Middle District of Tennessee, Nashville Division pursuant to 28 U.S.C. §1391 and its subparts.

–1–

## V. Statement of Facts

6. Plaintiff Gebremicael worked for Central Parking System, Inc. from June 7, 2001 until January 22, 2002 and again from April 29, 2003 until July 23, 2010, when he was terminated.

7. The Plaintiff Gebremicael was previously terminated by Central Parking System, Inc. in 2002 for failure to provide an unexpired work authorization card, although Mr. Gebremicael was an Asylee and as such Central Parking was required by law not to request specific documentation.

8. Plaintiff Gebremicael was later reinstated after he brought a complaint against Central Parking before the Office of Special Counsel for Immigration-Related Unfair Employment Practices.

9. In 2008, Plaintiff Gebremicael was given warnings on two incidents for actions where warnings were not warranted, but rather were given for discriminatory and retaliatory purposes. At that time, Mr. Gebremicael stated on the warning that retaliation for the 2002 incident was the reason for the warning. The warnings have been removed from the Center Parking System's file and Central Parking claims no knowledge of them.

10. Also in 2008, there was an incident in which Mr. Gebremicael spoke with Richard Wagner and the Operation Manager, John Fissett, both employees of Central Parking, and stated to them that his wages and the frequency of his drug testing as compared to other employees were discrimination and he was going to report Central Parking to the government.

11. Throughout his tenure at Central Parking, Plaintiff Gebremicael had always received positive and complimentary feedback on his job performance from his direct supervisors.

12. On March 3, 2009, the Plaintiff applied to be valet supervisor for TPAC, due to his experience and education. He was denied the job and it was given to an American man.

13. In January 2010, Mr. Gebremicael complained to Richard Wagner, an employee of

Central Parking, that Supervisor Josh Artley, also an employee of Central Parking, was harassing him. Mr. Wagner told the Plaintiff that he would take care of it, but the harassment continued.

14. In February 2010, Josh Artley told the Plaintiff: "You need to leave your job for an American."

15. On July 21, 2010, Josh Artley once again told the Plaintiff: "You need to leave your job for an American."

16. On July 22, 2010 Ms. Elizabeth Nugan, an employee of Central Parking, conducted an audit while Mr. Gebremicael was working. Prior to the audit, she told the Plaintiff: "You immigrant, you should have been gone a long time ago."

17. On July 27, 2010, Central Parking received a letter from the Plaintiff's attorney, Michael Hoskins, stating that he intended to file a charge with the EEOC if the discrimination did not stop.

18. On July 29, 2010 Mr. Gebremicael went to have a meeting with management at Central Parking. At that time he brought his attorney, Michael Hoskins.

19. On July 29, although representatives of Central Parking System stated that they were willing to meet with Mr. Gebremicael for a discussion prior to firing him, they were not willing to meet with Mr. Gebremicael with an attorney present.

20. After refusing to meet with the managers at Central Parking without an attorney present, Mr. Gebremicael was then given his notice of termination, which was dated and signed on July 23, 2010.

21. Thus, as per the notice of separation, on July 23, 2010 Plaintiff Gebremicael was terminated from his employment at Central Parking System, Inc. for purportedly violating cash and ticket handling procedures.

22. After termination, the Plaintiff went by the Central Parking lot on August 9, 2010, at which time he spoke with Ron Wilkes, the night area supervisor at Central Parking.

23. Mr. Gebremicael stated to Mr. Wilkes: "they been harass me for long time, there is an issue, they mistreat me," to which Mr. Wilkes responded: "I know how they do you. I know because they do them the same way…even Omar…they harass me, that's what he said to me." This discrimination was visible to other employees and Mr. Gebremicael's direct supervisors.

24. Upon appeal from denial of unemployment, the Department of Labor and Workforce Development found that Gebremicael was not fired for cause. More specifically, the Unemployment Appeals Hearing Officer found that "the claimant was basically accused of fraudulently reselling used tickets and taking the money for profit. No one saw the claimant do this, and there were no prior incidents to support a pattern of behavior. Why no one asked the claimant about what happened before firing him is suspicious."

25. As a result of the actions above, the Plaintiff has suffered substantial loss in salary and benefits and has suffered emotional stress, humiliation and embarrassment.

26. The acts described above constitute pattern and practice of discrimination the purpose of which was made against the Plaintiff because of his national origin and retaliation for complaints about discrimination.

### VI. Cause of action

### Count I

### National Origin Discrimination (TITLE VII)
### 42 U.S.C. §2000e *et seq.*

27. The allegations of paragraphs 1 through 26 of this Complaint are incorporated by

reference into this Count of this Complaint as if set forth verbatim herein.

28. The Plaintiffs assert that the facts heretofore described in this Complaint constitute continuing acts of national origin discrimination and wrongful discharge in violation of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §2000e, *et seq.*, which violated the Plaintiffs' rights as set forth under the Act.

29. Plaintiff further asserts that the Defendant willfully and intentionally discriminated against him because of his national origin. Any other reason advanced by the Defendant for discharging and harassing the Plaintiff which is inconsistent with the reasons set forth in this Complaint is pretextual and untrue.

30. The Plaintiff asserts that, at all relevant times, these discriminatory acts of the Defendant were willful, intentional, malicious, and undertaken with reckless disregard and indifference to the Plaintiffs' rights protected by the Civil Rights Act of 1964.

31. As a proximate result of Defendant's wrongful and unlawful acts, the Plaintiff has suffered lost wages, future lost wages, has endured emotional pain and suffering including embarrassment, humiliation, anxiety and depression, and has suffered a loss of self esteem.

**Count II**

**Retaliatory Discrimination (TITLE VII)**
**42 U.S.C. §2000e** *et seq.*

32. The allegations of paragraphs 1 through 31 of this Complaint are incorporated by reference into this Count of this Complaint as if set forth verbatim herein.

33. The Plaintiffs assert that the facts heretofore described in this Complaint constitute continuing acts of retaliation under the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §2000e, *et*

*seq.*, which violated the Plaintiffs' rights as set forth under the Act.

34. Plaintiff further asserts that the Defendant willfully and intentionally retaliated against him for opposing discriminatory practices. Any other reason advanced by the Defendant for discharging and harassing the Plaintiff which is inconsistent with the reasons set forth in this Complaint is pretextual and untrue.

35. The Plaintiff asserts that, at all relevant times, these retaliatory acts of the Defendant were willful, intentional, malicious, and undertaken with reckless disregard and indifference to the Plaintiffs' rights protected by the Civil Rights Act of 1964.

36. As a proximate result of Defendant's wrongful and unlawful acts, the Plaintiff has suffered lost wages, future lost wages, has endured emotional pain and suffering including embarrassment, humiliation, anxiety and depression, and has suffered a loss of self esteem.

### VII.  Damages

37. The allegations of paragraphs 1 through 36 of this Complaint are incorporated by reference into this Count of the Complaint as if set forth verbatim herein.

38. As a direct and proximate result of the Defendant's wrongful, intentional, willful, malicious, oppressive, and reckless acts, the Plaintiff has suffered lost wages, has lost benefits, has lost future wages, has endured emotional pain and suffering, including humiliation, embarrassment, anxiety, depression, and loss of self esteem.

WHEREFORE, premises considered, the Plaintiff prays:

1. That the Plaintiff be awarded compensatory damages in the amount of Five Hundred Thousand Dollars ($500,000), and all other damages to which he may be entitled to under the Civil Rights Act of 1964 and Civil Rights Act of 1991 including, but not limited to, compensatory damages for emotional pain and suffering, humiliation and embarrassment, depression, anxiety, and loss of self esteem; lost wages, future lost wages, lost benefits, punitive damages for willful violation of the Civil Rights Act of 1964, prejudgment interest, and the costs of this action.

2. That a jury hear this cause.

3. That the Plaintiff be awarded reasonable attorneys' fees pursuant to 42 U.S.C. §2000e-5.

4. That the Plaintiff has such other and further relief to which he may be entitled.

Respectfully submitted,

/s/ Susan R. Mader
Susan R. Mader, BPR No. 28396
PRICE, HILL & KOLARICH
201 4th Avenue North, Suite 1800
Nashville, TN 37219
Phone: 615-244-5772
Fax: 615-244-5821
Email: susan@wthillatty.com